**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER HOWARD,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 21-695** |
| | : | |
| **ALBERT EINSTEIN MEDICAL CENTER** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

**<u>MEMORANDUM</u>**

**TUCKER, J.**                                                                       **March 14, 2022**

Presently before the Court is Defendant Albert Einstein Medical Center's ("Defendant"

or "Einstein Medical") Motion to Dismiss (ECF No. 4), Defendant's Corrected Memorandum of

Law (ECF No. 6), Plaintiff Christopher Howard's ("Plaintiff" or "Howard") Response in

Opposition (ECF No. 7), and Defendant's Reply Brief (ECF No. 10). Upon careful consideration

of the Parties' submissions, and for the reasons outlined below, Defendant's Motion is

**GRANTED**.

**I.        FACTUAL AND PROCEDURAL BACKGROUND[1]**

Plaintiff was diagnosed with a learning disability in kindergarten. Compl. at ¶ 10. The

disability impacts his ability to process information; he becomes easily confused, especially in

stressful situations, and struggles to formulate words and organize thoughts. *Id*.

In January of 2001, Defendant hired Howard as a Supply Technician, where he served in

this role for over eighteen years. Compl. at ¶ 12; *see* Resp. at 4. Einstein Medical was aware of

Plaintiff's disabilities when they hired him. Compl. at ¶ 13. During his tenure in this position,

---

[1] This section draws primarily from Plaintiff's Complaint ("Compl.") and Plaintiff's Response Brief ("Resp.")

Howard received positive feedback from his supervisor, Christina Dean ("Ms. Dean"), as he provided exceptional work performance. *Id*. at ¶ 14.

On or about August 9, 2019, Howard entered the Neonatal Intensive Care Unit ("NICU") to stock bins in its utility room when an Einstein Medical employee, Kasjae Wilson ("Wilson"), walked into the room, talking on the phone. Compl. at ¶ 17. Plaintiff asked Wilson to move so he could continue and complete stocking the bins. *Id*. Howard pleads that nothing else occurred that day between Wilson and himself. *Id*.

Wilson, however, filed a complaint with administration and claimed that while in the utility room, Plaintiff inappropriately touched her. Compl. at ¶ 18. Three days later, Joanne Woern ("Woern"), Director of the Storeroom Materials Department, scheduled a meeting with Howard and Ms. Dean. *Id*. at ¶ 18. At the meeting, Woern informed Howard of Wilson's allegations and that, following the meeting, Einstein Medical would suspend him while it investigated the claims. *Id.* at ¶ 20. Howard pleads he had difficulty understanding Woern's questions and accusations "due partly to his developmental disabilities." *Id*. at ¶ 19.

On August 21, 2019, Defendant terminated Howard. Compl. at ¶ 21. Seven days later, Plaintiff filed an Employee Grievance where he contested his termination and requested to be reinstated. *Id*. at ¶ 22. On September 4, 2019, Howard appeared at the grievance hearing held by Woern and two Human Resource representatives, Carla Pasquali and Loren Margot. *Id*. at ¶ 23. Plaintiff was informed that legal representatives and other individuals, including his mother, were not allowed to attend the hearing. *Id*. Because of his disability, Howard pleads he was stressed, nervous, and overwhelmed throughout the hearing. *Id*. at ¶ 22.

Subsequently, Defendant's Employee Relations Department denied Plaintiff's grievance. Compl. at ¶ 24. The department determined that Wilson sounded more credible than Howard. *Id*.

2

It further instructed Plaintiff on his appellate rights and the mechanisms to appeal the decision, if he wished. *Id*. On October 21, 2019, Howard appealed which was again denied. *Id*. at ¶ 25.

Plaintiff filed his Complaint on February 9, 2021, alleging Defendant terminated and discriminated against him because of his disability, in violation of the: (1) Americans with Disabilities Act ("ADA"); and (2) Pennsylvania Human Relations Act ("PHRA"). Compl. at ¶¶ 31-45. Although Plaintiff's Complaint alleges discrimination based on his disability, he seemingly acknowledges that he was fired "based on 'he said' 'she said' allegations" of sexual harassment, "without first being provided a medical evaluation, harassment training, or another form of disciplinary action."[2] *Id*. at ¶ 35. Howard's Complaint further stresses "[Defendant] rushed to judgment and simply terminated him. At the time, the news and social media were highlighting sexual harassment complaints, and in the anti-male environment the investigation was unfairly skewed against Howard."[3] *Id*. at ¶ 29.

Defendant moves to dismiss Plaintiff's Complaint, pursuant to Fed. R. of Civ. Pro. 12(b)(6), failure to state a claim.  ECF No. 5.

## II.    STANDARD OF REVIEW

A Rule 12(b)(6) Motion to Dismiss seeks to test the sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The touchstone of that pleading standard is plausibility.  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that

---

[2] Plaintiff hints at a procedural due process violation but does not fully articulate this as a separate and distinct count in his Complaint. Specifically, he argues he "was ushered through the procedural process to determine wrongdoing with no representation and no initial understanding of the allegations being made against him, despite Einstein being aware he has developmental disabilities and would have difficulty understanding the situation and defending himself." Compl. at ¶ 34. Since Plaintiff does not allege a due process violation, this Court will not address this issue.

[3] Again, Plaintiff makes a different argument that he does not specify in an individualized count. Here, he seemingly suggests that Defendant discriminated against him because of his sex. As stated above, because he does not allege discrimination based on sex, this Court will not address this issue.

is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted). Facial plausibility requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* A plaintiff will not prevail if he provides only "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). Instead, the plaintiff must detail "enough facts to raise a reasonable expectation that discovery will reveal evidence of 'each necessary element of the claims alleged in the complaint.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556 (2007)).

The Third Circuit set forth a three-part test that district courts must apply when evaluating whether allegations survive a 12(b)(6) motion to dismiss. *Santiago v. Warminster Township*, 629 F.3d 121 (3d Cir. 2010). A court must: (1) identify the elements of the claim; (2) review the complaint to strike conclusory allegations; and (3) look at the well-pleaded components of the complaint and evaluate "whether all the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). If the complaint fails to do so, the motion to dismiss will be granted.

## III.    DISCUSSION

### A.  Count II – PHRA Claims

Defendant first argues Plaintiff untimely filed a charge of discrimination with the Pennsylvania Human Relations Commission ("PHRC") as proscribed by 43 Pa. Stat. 959(a), (h). Def.'s Br. at 4. Defendant contends Plaintiff was required to file a charge no more than 10 days after the alleged discrimination occurred. Here, Defendant terminated Howard on August 21, 2019, but Plaintiff did not file his charge until June 16, 2020, 300 days after the final alleged

discrimination action. Plaintiff does not oppose the dismissal of his PHRA claim. Pl.'s Resp. at 7.

Because Plaintiff does not oppose the dismissal of Court II, this Court will not address this argument and dismisses this claim with prejudice.

### B. Count I – ADA claim

Defendant contends that Plaintiff failed to plead that Einstein fired him or was motivated to fire him because of his alleged disability. Def.'s Br. at 5. Einstein asserts that Howard's contention that he should have been provided "'medical evaluation, harassment training, or another form of disciplinary action' is a business decision that does not have any bearing on his inability to state claim." *Id*.

To establish a *prima facie* case of discrimination under the ADA, a plaintiff needs to allege that they: (1) are disabled within the meaning of the ADA; (2) are otherwise qualified to perform the essential functions of the job, with or without reasonable employer accommodations; and (3) suffered an adverse employment consequence as a result of discrimination. *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). Included within the ADA's definition of "disability" is "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(C). To meet the "regarded as" definition, an individual must establish that they have been subjected to an adverse employment outcome "because of an actual or perceived physical or mental impairment whether [] the impairment limits or is perceived to limit a major life activity," above the level of a "transitory and minor" impairment expected to last under 6 months. 42 U.S.C. § 12102(3).

Here, even if this Court were to assume that Plaintiff satisfied and sufficiently plead the first two elements listed above, he fails to meet the last one. Although Plaintiff's Complaint

alleges Defendant terminated him because of his learning disability, the pleaded facts do not support this assertion. Howard specifically plead that he was terminated after Defendant received a complaint from a female coworker, Wilson, alleging inappropriate touching by Howard. Defendant investigated whether Howard inappropriately touched Wilson and concluded that Wilson was more credible than him. This determination led to Howard's eventual termination.

Nowhere in the Complaint does it state that Defendant mistreated Howard *because* of his disability. On the contrary, Plaintiff's own Complaint pleads he was fired "based on 'he said' 'she said' allegations" of sexual harassment. Compl. at ¶ 35. Additionally, it states "the news and social media were highlighting sexual harassment complaints, and in the anti-male environment the investigation was unfairly skewed against [him]." *Id*. at ¶ 29. By his own admission, Plaintiff admits he was fired because of a sexual harassment complaint and not because of any discriminatory act based on his learning disability. Thus, Plaintiff's Complaint is insufficiently plead and must be dismissed.

Plaintiff attempts to suggest that Defendant should have provided him with an alternative to termination such as "a medical evaluation, harassment training, or another form of disciplinary action." Compl. at ¶ 34. Although the Court sympathizes with Plaintiff's disability and work history, dedicating eighteen-years of service to Defendant, the Court must consider "whether the real reason [for termination] is [discriminatory]," and "not whether the employer made the best, or even a sound business decision[.]" *Atkinson v. Lafayette College*, 460 F.3d 447, 454 (3d Cir. 2006) (quoting *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997)). As stated above, the real reason for termination was because of alleged sexual harassment and not because of Plaintiff's disability. Regardless of whether Defendant should have provided alternatives for Plaintiff, the Court cannot second guess a company's business decision.

**IV.     CONCLUSION**

For the foregoing reasons, this Court grants Defendant's Motion to Dismiss and

dismisses Plaintiff's Complaint with Prejudice.

An appropriate order follows.